WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys at Law
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
Attorneys for Plaintiff
New Jersey Turnpike Authority

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
-----------------------------X
                             :
NEW JERSEY TURNPIKE          :
AUTHORITY,                   :
                             :        Civil Action No.
          Plaintiff,         :
                             :
v.                           :
                             :        VERIFIED COMPLAINT
YOUTUBE, INC., NEXTPOINT,    :
LLC, LIVELEAK.COM, ABC       :
CORPORATIONS 1-10, and JOHN  :
DOES 1-10,                   :
                             :        DOCUMENT FILED
          Defendants.        :        ELECTRONICALLY
                             :
-----------------------------X
```

Plaintiff New Jersey Turnpike Authority ("NJTA"),

having its principal place of business at 581 Main Street,

Woodbridge, Middlesex County, New Jersey, by and through

counsel, for its Verified Complaint against Defendants, YouTube,

Inc., with an address 1000 Cherry Avenue, San Bruno, California,

Nextpoint, LLC, with an address at 311 North Robertson

Boulevard, Beverly Hills, California, and LiveLeak.com, with an

address that is unknown at this time but, according to its website, accepts correspondence via electronic mail at staff@liveleak.com and via facsimile at 1-866-487-9547, states and alleges as follows:

## NATURE OF THE ACTION

1.   This is a civil action by the prospective owner of federally registered copyrights against three entities that operate websites that infringe on the exclusive bundle of rights granted to Plaintiff under the Copyright Act, 17 U.S.C. § 101 et seq. (the "Copyright Act"). In particular, the websites display a sensational video, recorded by the Plaintiff's camera, containing graphic detail of a vehicle crashing into a toll plaza and burning.  The driver was killed in the accident. While the video is proprietary and confidential, it was wrongfully misappropriated and disseminated, and now appears on the three websites operated by Defendants.  Plaintiff is, and at all relevant times has been, the copyright owner of this video. The video serves no worthwhile purpose and shows a tremendous lack of common human decency towards the family of the victim. Nonetheless, Defendants have either refused or failed to remove the video from their websites.

**THE PARTIES**

2.　　Plaintiff New Jersey Turnpike Authority ("NJTA") is an independent authority created pursuant to N.J. Stat. Ann. § 27:23-1 et. seq. NJTA exercises control over the operation of the Garden State Parkway.

3.　　Defendant YouTube, Inc. ("YouTube") is a Delaware corporation that maintains a principal place of business at 1000 Cherry Avenue in San Bruno, California.

4.　　YouTube operates a popular online service that can be accessed at the website www.YouTube.com.

5.　　Defendant LiveLeak.com ("LiveLeak") is a company that maintains a principal place of business in the United Kingdom. Upon information and belief, based upon the "Terms and Conditions" on LiveLeak's website, LiveLeak has a registered agent in the Commonwealth of Virginia.

6.　　LiveLeak operates a popular online service that can be accessed at the website www.LiveLeak.com.

7.　　Defendant NextPoint LLC ("NextPoint") is a Delaware limited liability company that maintains a principal place of business at 311 North Robertson Boulevard in Beverly Hills, California.

8.　　NextPoint operates a popular online service that can be accessed at the website www.Break.com.

9.   YouTube, LiveLeak and NextPoint encourage users to upload video clips to their respective websites and share those clips with other users.  Clips uploaded to the websites are typically available for viewing free of charge by the public.

10.   Users of YouTube, LiveLeak and NextPoint services can search for videos stored on the websites by entering a search query.  As a result of their search, users will receive a list of single frame images of video clips stored on the websites, which assists users in locating the video for which they are searching.

11.   In addition, users can search for videos on YouTube.com, LiveLeak.com and Break.com by entering search terms in search engines, including the popular search engine www.google.com. Searches conducted on search engines such as www.google.com for videos may yield results that include links to video clips on YouTube.com, LiveLeak.com and Break.com.

12.   Defendants ABC Corporations 1 through 10 are entities that caused or contributed to portions of the damages set forth herein, whose identities are presently unknown.

13.   Defendants John Does 1 through 10 are natural persons who caused or contributed to portions of the damages set forth herein, whose identities are presently unknown.

-4-

## JURISDICTION AND VENUE

14.   This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.

15.   This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.   This Court has personal jurisdiction over Defendants. Through their services, Defendants regularly conduct and/or solicit business in New Jersey, derive substantial revenue from services rendered in New Jersey, and expect or reasonably should expect their infringing conduct to have consequences in New Jersey.   In addition, Defendants derive substantial revenue from interstate commerce.

17.   Venue is appropriate in this District pursuant 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District, and under 28 U.S.C. § 1391(c) because Defendants are subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL COUNTS

18.   The NJTA owns and operates several cameras that are focused on the Great Egg Harbor toll plaza, located along the Garden State Parkway ("Parkway"), in Somers Point, New Jersey.

The NJTA also owns and operates the support equipment and communication pathways by which these cameras function.

19.  In particular, the NJTA owns and operates a camera that is situated on the northbound side of the Parkway, which captures images of vehicles traveling southbound on the Parkway as they approach and enter the Great Egg Harbor toll plaza (hereafter referred to as the "operations camera").

20.  The operations camera operates through digital video technology.  The images captured on camera are transmitted through a communications pathway to a digital video recorder in the NJTA Traffic Management and Technology Center, located in Woodbridge, New Jersey.

21.  The operations camera captures a live feed of the Great Egg Harbor toll plaza.  In addition, at various times, the operations camera records and memorializes the traffic patterns at the Great Egg Harbor toll plaza.

22.  Most recently, the operations camera was programmed to record the Great Egg Harbor toll plaza in early 2007 in connection with an unrelated matter, and continued to record activity as of May 10, 2007.

23.  The NJTA also owns and operates other cameras that capture the traffic patterns along the Parkway at the Great Egg Harbor toll plaza.

-6-

24.  One of the cameras is situated on the southbound side of the Parkway and records images of vehicles traveling southbound as they exit the Great Egg Harbor toll plaza.  This camera is a Video Transaction Data Multiplexer ("VTDM camera"), which converts the data it records to a hard drive located directly at the Great Egg Harbor toll plaza.

25.  On May 10, 2007, a vehicle traveling southbound on the Parkway crashed into the Great Egg Harbor toll plaza in Somers Point, New Jersey.

26.  The car accident resulted in the death of a 52-year old New Jersey resident.

27.  The car accident was recorded by two of the NJTA cameras at the Great Egg Harbor toll plaza: the operations camera and the VTDM camera.

28.  Because the videos of the car accident were recorded using the NJTA's cameras and support equipment, the videos are original creations of the NJTA and constitute the copyrighted property of the NJTA.  Indeed, at all relevant times, the NJTA has been the copyright owner of the videos.

29.  In fact, on May 22, 2007, the NJTA filed applications, along with the required fee and deposit, with the United States Copyright Office to obtain federally registered copyrights for

-7-

the videos of the car accident recorded by the operations camera and the VTDM camera.

30. Moreover, the NJTA maintains an "Information Security Policy" to protect NJTA's information from unauthorized disclosure. A copy of NJTA's "Information Security Policy" is attached hereto as Exhibit A.

31. The "Information Security Policy" covers all forms of data, including "text, video, audio, imagery, and other representations used as information or in control functions." See Ex. A at 1.

32. The "Information Security Policy" requires all users of NJTA information tools and resources to "maintain the privacy and confidentiality of information regardless of form, i.e., electronic or paper." Id. at 2.

33. On or about May 17, 2007, the NJTA learned that video of the aforesaid fatal car accident recorded by one of its cameras – the operations camera situated on the northbound side of the Parkway – had been posted on the internet at the website www.YouTube.com.

34. Accordingly, on May 17, 2007, the NJTA sent correspondence to YouTube demanding that the video be removed from the website.

35. Although YouTube agreed to remove the video from the website, the video has apparently been copied by YouTube users and remains on the website.

36. YouTube did not try to prevent the very same video from being uploaded again by users immediately after it was purportedly removed.

37. On or about May 17, 2007, the NJTA learned that the video of the aforesaid car accident also had been posted on the internet at the website www.LiveLeak.com.

38. On May 17, 2007, the NJTA contacted LiveLeak through its "Contact Us" feature on its website asking that the video be removed from the website.

39. In addition, on May 20, 2007, the NJTA sent correspondence to LiveLeak demanding that the video be removed from the website.

40. LiveLeak refused to remove the graphic and sensational video from its website absent a "take-down order" from the Court.

41. On May 21, 2007, the NJTA learned that its copyrighted video was also being displayed on Break.com, the website operated by defendant NextPoint.

42. Upon information and belief, the videos become part of the YouTube.com, LiveLeak.com and Break.com libraries for

performance and display on the companies' respective websites. Defendants control and directly profit from these websites.

43.   Upon information and belief, through banner advertising displayed on their websites, Defendants derive advertising revenue directly attributable to the works infringing copyrights of Plaintiff and others.

44.   Defendants and their users have not received a valid license, authorization, permission or consent to use the registered copyrighted works owned by the NJTA that have appeared and continue to appear on YouTube.com, LiveLeak.com and Break.com.

45.   Defendants have the ability to control the content on their website, as evidenced by their "Terms and Conditions," which users must agree to before posting videos.

46.   Nonetheless, in violation of the NJTA's rights, Defendants have willfully, intentionally and purposefully reproduced and publicly displayed the registered copyrighted works.

47.   Defendants also knowingly facilitated, enabled, induced and materially contributed to infringing uses thereof, and/or refused to exercise their ability to control or supervise infringing uses thereof from which they obtain direct financial benefits.

48. As of May 21, 2007, according to their websites, the NJTA's video from the operations camera had been viewed 189,037 times on LiveLeak.com, 19,833 times on YouTube.com, and 6,933 times on Break.com.

49. Less than 24 hours later, according to the websites, NJTA's video from the operations camera had been viewed 213,295 times on LiveLeak.com, 24,346 times on YouTube.com, and 16,812 times on Break.com.

## COUNT I

### (Direct Copyright Infringement – Public Performance)

50. Plaintiff repeats and realleges the previous allegations of the Verified Complaint as if more fully set forth herein.

51. Defendants, without the permission or consent of Plaintiff, and without authority, are publicly performing and purporting to authorize the public performance of Plaintiff's federally registered copyrighted audiovisual works.

52. Defendants caused this works to be publicly performed upon request by users.

53. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to publicly perform its federally registered copyrighted audiovisual works.

-11-

54.  Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

55.  As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Defendants have caused and will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured by money damages.

**WHEREFORE,** plaintiff New Jersey Turnpike Authority demands judgment against defendants YouTube, Inc., NextPoint, LLC and LiveLeak.com as follows:

a.  For a declaration that Defendants' service willfully infringes upon Plaintiff's copyrights, both directly and secondarily;

b.  For a temporary, preliminary and permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert or participation with each or any of them, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of

any of Plaintiff's copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

c.  For compensatory and consequential damages;

d.  For pre-judgment and post-judgment interest;

e.  For attorneys' fees and costs of suit; and

f.  For such other and further relief as the Court deems just and proper.

## COUNT II

**(Direct Copyright Infringement - Public Display)**

56. Plaintiff repeats and realleges the previous allegations of the Verified Complaint as if more fully set forth herein.

57. Defendants, without the permission or consent of Plaintiff, and without authority, are publicly displaying and purporting to authorize the public display of Plaintiff's federally registered copyrighted audiovisual work.

58. Defendants caused this work to be publicly displayed by showing individual images of at least one infringing video clip in response to searches for videos on Defendants' respective websites.

59. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive rights under the Copyright Act to publicly display its copyrighted audiovisual work.

60. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

61. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright law, Defendants have caused and will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured by money damages.

**WHEREFORE,** plaintiff New Jersey Turnpike Authority demands judgment against defendants YouTube, Inc., NextPoint, LLC and LiveLeak.com as follows:

a. For a declaration that Defendants' service willfully infringes upon Plaintiff's copyrights, both directly and secondarily;

b. For a temporary, preliminary and permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert or participation with each or any of them, cease directly or

-14-

indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of any of Plaintiff's copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

c.    For compensatory and consequential damages;

d.    For pre-judgment and post-judgment interest;

e.    For attorneys' fees and costs of suit; and

f.    For such other and further relief as the Court deems just and proper.


## COUNT III

**(Direct Copyright Infringement – Reproduction)**

62.    Plaintiff repeats and realleges the previous allegations of the Verified Complaint as if more fully set forth herein.

63.    Defendants, without the permission or consent of Plaintiff, and without authority, are making, causing to be made, and purporting to authorize the making of unauthorized copies of Plaintiff's federally registered copyrighted audiovisual work.

64. Defendants' conduct constitutes direct infringement of Plaintiff's exclusive right under the Copyright Act to reproduce its copyrighted work.

65. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

66. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright law, Defendants have caused and will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured by money damages.

**WHEREFORE,** plaintiff New Jersey Turnpike Authority demands judgment against defendants YouTube, Inc., NextPoint, LLC and LiveLeak.com as follows:

      a. For a declaration that Defendants' service willfully infringes upon Plaintiff's copyrights, both directly and secondarily;

      b. For a temporary, preliminary and permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert or participation with each or any of them, cease directly or

indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of any of Plaintiff's respective copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

c.    For compensatory and consequential damages;

d.    For pre-judgment and post-judgment interest;

e.    For attorneys' fees and costs of suit; and

f.    For such other and further relief as the Court deems just and proper.

## COUNT IV

### (Inducement of Copyright Infringement)

67.    Plaintiff repeats and realleges the previous allegations of the Verified Complaint as if more fully set forth herein.

68.    Defendants' users have infringed and are infringing upon Plaintiff's rights in its registered copyrighted audiovisual works by, _inter alia_, uploading infringing copies of Plaintiff's copyrighted works onto YouTube.com, LiveLeak.com, and Break.com, respectively, and publicly performing or

displaying or purporting to authorize the public performance or display of such infringing videos, all without authorization.

69. YouTube.com, LiveLeak.com, and Break.com users are therefore directly infringing on Plaintiff's exclusive rights of reproduction, public performance, and public display under 17 U.S.C. §§ 106(1), (4) and (5).

70. YouTube is liable under the Copyright Act for inducing the infringing acts of YouTube.com users.

71. LiveLeak is liable under the Copyright Act for inducing the infringing acts of LiveLeak.com users.

72. NextPoint is liable under the Copyright Act for inducing the infringing acts of Break.com users.

73. Defendants are unlawfully fostering copyright infringement by YouTube.com, LiveLeak.com and Break.com users.

74. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

75. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright law, Defendants have caused and will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured by money damages.

**WHEREFORE,** plaintiff New Jersey Turnpike Authority demands judgment against defendants YouTube, Inc., NextPoint, LLC and LiveLeak.com as follows:

    a.    For a declaration that Defendants' service willfully infringes upon Plaintiff's copyrights, both directly and secondarily;

    b.    For a temporary, preliminary and permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert or participation with each or any of them, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of any of Plaintiff's copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

    c.    For compensatory and consequential damages;

    d.    For pre-judgment and post-judgment interest;

    e.    For attorneys' fees and costs of suit; and

    f.    For such other and further relief as the Court deems just and proper.

## COUNT V

### (Contributory Copyright Infringement)

76.  Plaintiff repeats and realleges the previous allegations of the Verified Complaint as if more fully set forth herein.

77.  Defendants' users have infringed and are infringing Plaintiff's rights in its registered copyrighted audiovisual works by, inter alia, uploading infringing copies of Plaintiff's copyrighted work onto YouTube.com, LiveLeak.com, and Break.com, respectively, and publicly performing or displaying or purporting to authorize the public performance or display of such infringing videos, all without NJTA's authorization.

78.  YouTube.com, LiveLeak.com, and Break.com users are therefore directly infringing on Plaintiff's exclusive rights of reproduction, public performance, and public display under 17 U.S.C. §§ 106(1), (4) and (5).

79.  Defendants are each liable as contributory copyright infringers for the infringing acts of their respective users.

80.  Defendants enable, induce, facilitate and materially contribute to each act of infringement by their respective users.

81.  Defendants have actual and constructive knowledge that their respective users are employing their websites –

-20-

YouTube.com, LiveLeak.com and Break.com – to copy, publicly perform and publicly display Plaintiff's copyrighted work.

82.  Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

83.  As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright law, Defendants have caused and will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured by money damages.

**WHEREFORE,** plaintiff New Jersey Turnpike Authority demands judgment against defendants YouTube, Inc., NextPoint, LLC and LiveLeak.com as follows:

a.  For a declaration that Defendants' service willfully infringes upon Plaintiff's copyrights, both directly and secondarily;

b.  For a temporary, preliminary and permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert or participation with each or any of them, cease directly or indirectly infringing, or causing, enabling,

-21-

facilitating, encouraging, promoting, and
inducing or participating in the infringement of
any of Plaintiff's copyrights or exclusive rights
protected by the Copyright Act, whether now in
existence or hereafter created;

c.    For compensatory and consequential damages;

d.    For pre-judgment and post-judgment interest;

e.    For attorneys' fees and costs of suit; and

f.    For such other and further relief as the Court
deems just and proper.

<u>COUNT VI</u>

**(Vicarious Copyright Infringement)**

84.   Plaintiff repeats and realleges the previous
allegations of the Verified Complaint as if more fully set forth
herein.

85.   Defendants' users have infringed and are infringing
Plaintiff's rights in its registered copyrighted audiovisual
works by, <u>inter alia</u>, uploading infringing copies of Plaintiff's
copyrighted works onto YouTube.com, LiveLeak.com, and Break.com,
respectively, and publicly performing or displaying or
purporting to authorize the public performance or display of
such infringing videos, all without NJTA's authorization.

86. YouTube.com, LiveLeak.com, and Break.com users are therefore directly infringing on Plaintiff's exclusive rights of reproduction, public performance, and public display under 17 U.S.C. §§ 106(1), (4) and (5).

87. Defendants are each vicariously liable for the infringing acts of their respective users.

88. Defendants have the right and ability to supervise their users' infringing conduct, and to prevent their users from infringing on Plaintiff's copyrighted audiovisual work.

89. Defendants have significantly and directly benefited from the infringement by their users by using such videos to ultimately attract advertisers to pay for advertising space on their websites.

90. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Plaintiff.

91. As a direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under copyright law, Defendants have caused and will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured by money damages.

**WHEREFORE,** plaintiff New Jersey Turnpike Authority demands judgment against defendants YouTube, Inc., NextPoint, LLC and and LiveLeak.com as follows:

    a.   For a declaration that Defendants' service willfully infringes upon Plaintiff's copyrights, both directly and secondarily;

    b.   For a temporary, preliminary and permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners and assigns, and all persons acting in concert or participation with each or any of them, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, and inducing or participating in the infringement of any of Plaintiff's respective copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created;

    c.   For compensatory and consequential damages;

    d.   For pre-judgment and post-judgment interest;

    e.   For attorneys' fees and costs of suit; and

    f.   For such other and further relief as the Court deems just and proper.

DATED: May 22, 2007      WILENTZ, GOLDMAN & SPITZER P.A.


                 s/Donald E. Taylor

DONALD E. TAYLOR, ESQ.

90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey 07095
Phone: (732)636-8000
Fax: (732) 726-6520
dtaylor@wilentz.com

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that, to the best of my knowledge, information and belief, the matter in controversy herein is not the subject of any other proceeding pending in any court or of any pending arbitration proceeding.

DATED:  May 22, 2007        s/ Donald E. Taylor
                                  DONALD E. TAYLOR, ESQ.
                                  Wilentz Goldman & Spitzer P.A.
                                  90 Woodbridge Center Drive
                                  Suite 900, Box 10
                                  Woodbridge, NJ   07095-0958
                                  732) 636-8000
                                  Fax:  (732) 726-6520
                                  dtaylor@wilentz.com

## VERIFICATION

MICHAEL LAPOLLA, being of full age, hereby certifies:

1.    I am the Executive Director for the New Jersey Turnpike Authority, the plaintiff in this matter.

2.    Based on my personal knowledge and review of relevant documents, the foregoing allegations are true, correct and accurate.

DATED:  May 22, 2007

_____
MICHAEL LAPOLLA